**In the Matter of LAYTAN JEWELERS, INC., Debtor.**
**No. 68 B 752.**

United States District Court,
S. D. New York.
Aug. 24, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for United States, by Susan Freiman, Asst. U. S. Atty., of counsel.

Goldman, Frier & Altesman, New York City, for Trustee.

Levin & Weintraub, New York City, for former debtor, by Michael J. Crames, Charles H. Weintraub, New York City, of counsel.

MEMORANDUM

FRANKEL, District Judge.

 Having studied the papers at some length, I conclude that the learned Referee has stated the issues and the competing arguments fairly and thoroughly.* What is more to the practical point at hand, I conclude that his resolution of both issues should be affirmed. Like Referee Babitt, I think both questions are close. Somewhat uncomfortably, I find the Referee's decision more compelling on the first issue—where he is driven to disagree respectfully with a decision of the Fifth Circuit, In re Able Roofing & Sheet Metal Company, 425 F.2d 699, 701 (1970)—than on the second issue—where the same court squarely supports him, In re Indian Lake Estates, Inc., 428 F.2d 319, cert. denied, Stewart v. United States, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970). The result in the latter aspect, as the Fifth Circuit acknowledged, makes inroads upon policies the Congress sought to further in the relevant bankruptcy sections. On the other hand, the Trustee here overstates his case when he argues that the result could leave Internal Revenue free to preserve its priority while "[hold]ing off auditing forever * * *." (Supp.Memo. p. 2.) The answer to this is, of course, the three-year limitation on assessment, 26 U.S.C. § 6501. If and when that limitation is extended, it is because the IRS has not slept upon stale claims or hidden data critical for creditors—and thus has not caused the chief evils with which Congress was concerned.

The petition for review is denied. So ordered.

---

* The opinion of Referee Babitt is appended to this memorandum.

1. At the time the erstwhile debtor brought its motion, the government had not yet reduced its claim for interest. Consequently the debtors sought general claim classification of that portion of the claim which aggregated two items in the total

APPENDIX

ROY BABBIT, *Referee*:

On August 30, 1968 Laytan Jewelers, Inc. filed its petition for an arrangement under the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. As a creditor for pre-petition liability arising from taxes then due, the United States filed a claim in those proceedings. Section 57(n) of the Act, 11 U.S.C. § 93(n). That claim set forth six separate categories of taxes due, and it was amended from time to time in certain respects not germane to the instant controversy. However, as finally amended, the government's claim included a liability for taxes for the period ending January 30, 1964 in the amount of $5,508.02 and for interest thereon to the date of the filing of the arrangement petition in the amount of $918.40 for a total of $6,426.42.

The erstwhile debtor moved before this court for an order reclassifying as a general unsecured claim the government's claim in regard of this combined liability of $6,426.42.[1]

The essence of the debtor's position is that $6,426.42 is not entitled to priority status under Section 64(a) (4) of the Act as amended, 11 U.S.C. § 104(a) (4), with the result that the court should reclassify that portion of the claim as a general unsecured claim to share on a parity with general unsecured creditors under Section 65(a) of the Act, 11 U.S.C. § 105(a), providing for distribution of dividend on all allowed claims save those entitled to priority.

The then debtor and the United States as claimant were on common ground in assuring the court that there were no genuine issues of material fact which

amount of $6,953.63. By reason of the government's amendment to its claim, this controversy turns on the proper classification of $6,426.42. There was no controversy as to the other items of the claim. That is to say, the debtor did not dispute that the balance of the finally amended claim is entitled to priority status in the amount asserted.

required an evidentiary hearing and that the issues before the court were purely issues of law arising from application of the Bankruptcy Act as amended in 1966 by Public Law 89–496, 80 Stat. 270, particularly Section 17(a), 11 U. S.C. § 35(a) and Section 64(a) (4), 11 U.S.C. § 104(a) (4).[2] This being so, a stipulation as to the material facts was entered into between the United States and the attorneys for the then debtor and has been filed in these proceedings.

Before turning to the merits of this controversy, it is necessary to observe that the debtor was adjudicated a bankrupt when it failed to come to a final accord with its creditors. Section 376 of the Act, 11 U.S.C. § 776. A trustee in bankruptcy is now administering this estate. The trustee in bankruptcy, resting on the papers filed, has agreed to the continuance of this litigation as indeed he should.

Among other things, Section 47(a) of the Act, 11 U.S.C. § 75(a), imposes on trustees the duty of examining all proofs of claim and objecting to the allowance of improper claims, Section 47(a) (8), and to pay dividends after they are declared, Section 47(a) (11). Section 65 (a) of the Act, 11 U.S.C. § 105(a), requires that dividends be paid on all claims except such bearing priority status. This means that before the trustee may pay dividends to general creditors from the assets of the estate, he must first pay dividends to those creditors as to whom Congress has accorded priority status by reason of Section 64 (a) of the Act, 11 U.S.C. § 104(a). Taxes are accorded a fourth priority under that section, and unless there are sufficient funds to pay all of the Section 64(a) priority creditors in full, there can be no yield to general creditors. Resultantly the trustee is quite correct in pursuing the challenge by the erst-

while debtor to the classification of the government's claim for, should the trustee prevail, then less of the government's claim will be accorded priority, which in turn will result in a larger fund for general unsecured creditors.

And so I turn to the agreed facts. Laytan Jewelers, Inc. filed its federal corporate income tax return on July 15, 1964 for its fiscal year ending January 31, 1964. The company reported taxable income and paid its tax liability of $4,772.12.

Three years later, on July 18, 1967, the company filed the return for its fiscal year ending January 31, 1967. That return disclosed a net operating loss in excess of $25,000 with the result that no tax liability was shown. Accordingly, the company applied for a tentative carry back adjustment whereby the loss claimed for the year ended January 31, 1967 was to be carried back to the year ending January 31, 1964 resulting in a claim for a refund for that year of $5,931.00.

The Internal Revenue Service tentatively allowed this application for refund of taxes in the amount of $4,772.12 the amount the company had paid as taxes on the 1964 return, and in keeping with the administrative practice touching tentatively allowed applications for refund of taxes based upon carry back of loss, the Service refunded $5,047.14 representing the $4,772.12 and interest for the period from January 31, 1967 to January 17, 1968 of $275.02.

The company consented to an extension until December 31, 1969 of the period of limitation on assessment.

On August 30, 1968, as has been seen, the then debtor filed its petition for an arrangement in this court.

While this debtor conducted its business under the aegis of this court in the arrangement proceedings, the Internal

2. Although there was no subdivision (b) to Section 17 of the Bankruptcy Act as amended in 1966, the section appears to have been codified as Section 17(a). The 1970 amendments, irrelevant to the case at bar, did add subdivisions to Section 17.

Public Law 91–467. It is to be noted that Section 5(b) of the 1966 amending statute makes the change applicable in cases pending on the effective date of the amendment—October 3, 1966.

Revenue Service examined the company's returns for the years ending January 31, 1964 and January 31, 1967. As a result of the examinations, business expenses which the company had deducted for the year ending January 31, 1967 were disallowed. The entire loss claimed for that year was thus eliminated. This in turn eliminated the asserted loss carry back which had been the basis for the $4,772.12 refund of taxes the company had paid on its profits for the period ending January 31, 1964.

In addition and as a further result of the audit, certain expenses which the company had claimed for the year ending January 31, 1964 were also disallowed so that taxable income as shown for that period was increased from the $24,048.-15 shown on the return to $29,062.15.

Consequently a deficiency of tax of $5,508.02 for the year ending January 31, 1964 was called to the attention of the debtor. The Internal Revenue Service came to this figure by concluding that $4,772.12 represented the erroneously and tentatively paid refund attributable to the company's claim that it had had a net operating loss carry back for the year ending January 31, 1967. The sum $735.90 recognized adjustments based on disallowance of certain deductions taken by the company for the year ending January 31, 1964 less certain credits.

On June 4, 1969 the debtor was advised that the Internal Revenue Service had determined a deficiency of $5,508.02 for the taxable year ended January 31, 1964 and nine days later an assessment was made in that amount together with interest of $1,375.72.

When the government filed its proof of claim the interest amount had been increased to $1,445.63 but subsequent amendments reduced the interest to $918.40 as we have already noted.

It has been agreed that only the status of the tax deficiency of $5,508.02 and

interest of $918.40 are at issue in this controversy.

Simply stated the government's position is that these items are entitled to the priority accorded taxes owing the United States under Section 64(a) (4) of the Act, as amended in 1966, 11 U.S.C. § 104(a) (4), which reads as follows:

"(a) the debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * [4] taxes which became legally due and owing by the bankrupt to the United States * * * which are not released by a discharge in bankruptcy: * * * "

The trustee in bankruptcy, adopting the legal position of the erstwhile debtor presses the contention that the two items in dispute in the government's proof of claim are indeed released by a discharge in bankruptcy and consequently mandates a holding that the items in dispute come within the qualifying language of Section 64(a) (4) as amended and so are not entitled to priority. This contention is pressed on the court by reason of the 1966 amendment to Section 17(a) of the Bankruptcy Act which read and still reads in part as follows:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part except such as [1] are taxes which became legally due and owing by the bankrupt to the United States * * * within three years preceding bankruptcy: * * * "

In short, the trustee maintains that the items in dispute represent "taxes * * * legally due and owing * * *" more than three years before the arrangement petition was filed and hence are dischargeable under Section 17(a) with the result that they lose their priority status under Section 64(a) (4).[3]

---

3. Under Section 1(13) of the Act, 11 U.S.C. § 1(13) read with Section 1(24), 11 U.S.C. § 1(24) and Section 378(a)

(2), 11 U.S.C. § 778(a) (2), the pivotal date here is the date the original arrangement petition was filed.

The government refrains from suggesting that the mere filing of its last amended claim is dispositive of any controversy which the trustee might raise as to the claim. The definitive allowance or rejection of any claim is, of course, a judicial act required of the court which includes the referee under Section 1(9) of the Act, 11 U.S.C. § 1 (9). In re Two Rivers Woodenware Co., 199 F. 877 (7th Cir. 1912).

And so I turn to the legal issues. The government insists, and rightly so, that there are two separate legal issues arising out of the agreed facts and the trustee's challenge to the classification of the disputed items of the claim filed by the United States.

The first legal issue may properly be denominated for purposes of this decision as the "loss deficiency" controversy. It involves the reach of amended Section 17(a) to the facts surrounding the company's filing of its 1964 return and the payment of the called for tax, the loss carry back it sought by reason of the losses shown in the 1967 return, the tentative allowance of the loss carry back, the refund, the audit of the 1967 return which resulted in disallowance of enough deductions to wash out the loss carry back, and the assessment by reason of such disallowance by the Internal Revenue Service of the moneys which had been paid to the company on tentative allowance of the loss carry back.

Ours is a voluntary self asessment income tax system and the intricate tapestry of the Internal Revenue laws is neither to be ignored nor rendered meaningless by this court's construction of the language used by Congress in its 1966 amendments to Sections 17(a) and 64(a) (4) of the Bankruptcy Act. Those amendments, applicable solely to the limited area of bankruptcy, should therefore be read as harmoniously as possible with the broader and more far reaching impact of the Internal Revenue laws. Thus, while it may be true that

in amending the Bankruptcy Act Congress was, at least in part, tender towards the bankrupt in its zeal to give him a fresh start, Congress certainly did not mean to be so solicitous as to frustrate the elaborate procedures of the Internal Revenue Code in connection with the exercise of revenue power.

The fact is that in casting the amendments, Congress spoke in "less than sparkling clear prose"[4] and nowhere is the reach of language used more bereft of evidence than it was considered at all than in the use of the phrase "legally due and owing" added to Section 17(a) and which lies at the nub of this controversy. Section 64(a) (4) has always carried the phrase "legally due and owing" in connection with priority debts to be paid "in advance of payment of dividends to creditors". It was not until 1966 that the phrase appears in Section 17(a). The legislative history of the 1966 amendments is barren of any discussion of the phrase. Sen.Rep. 1158, 89th Cong., 2d Sess., (1966); House Rep. 687, 89th Cong., 1st Sess., (1965). Nor was thought given to the possible impact of this phrase in earlier bills to achieve the results of the 1966 legislation e. g., Letter of July 14, 1961 from the Treasury Department to the House Judiciary Committee, set out in House Rep. 687, *supra*, at 5–7.

The phrase "legally due and owing" appeared in Section 64(a) of the Bankruptcy Act of 1898, 11 U.S.C. (1934 ed.) § 104. That section provided that the court was to order the trustee to pay all taxes "legally due and owing" to the United States in advance of payment of dividends to creditors. The priority accorded the taxing authority was carried into Section 64(a) (4) by the broad sweeping 1938 revision to the 1898 Act, popularly called the Chandler Act. While that section as redrawn in 1938 did away with the requirement that the court direct payment by the trustee to the United States, taxes "legally due

---

4. Klebanoff v. Mutual Life Insurance Company of New York, 362 F.2d 975 (2d Cir. 1966) at 977.

and owing" by the bankrupt to the United States were given a fourth priority. When Section 17(a) was amended in 1966 to provide for dischargeability of taxes more than three years old, Congress appears to have utilized the phrase "legally due and owing," to harmonize with its long term usage in Section 64 (a) dealing with priorities of creditors and payment by the trustee of the finally allowed claim.

Quite apart from gloss given the phrase in Section 64(a) (4), the fact is that "legally due and owing" must be given content in light of both the tax gatherer's procedures and the expressed purposes of the bankruptcy amendments. And the two considerations are not so inconsistent as to yield a result supporting the one at the expense of the other.

It is plain that the "loss deficiency" issue must be resolved in light of 1967 facts and therefore within the three years preceding bankruptcy. "Certainly no tax could be computed which was dependent in amount upon events which might subsequently take place", In re International Match Corp., 79 F.2d 203 (2d Cir. 1935), cert. den. Delaware v. Irving Trust Co., 296 U.S. 652, 56 S.Ct. 368, 80 L.Ed. 464 (1935). To argue as the debtor did, and the trustee does, that the court must measure the operative facts as of 1964 yields a result totally out of harmony with the legitimate area of the tax collector's concern and the equally legitimate, but considerably narrower concern of Congress in the 1966 changes.

A corporation's net operating loss (the excess of certain deductions against gross income) may be allowed as a deduction against income of the three taxable years preceding the loss year. This is the "net operating loss carry back" contemplated by 26 U.S.C. (Supp. V) § 172(b) (1). The loss is first to be applied as a deduction against income earned in the earliest of the three years preceding the loss year. 26 U.S.C. (Supp. V) § 172(b) (2).

It is thus clear that it could not have been until 1967 when it sustained its net operating loss that the company could have invoked the provisions of 26 U.S.C. § 172 against the income reported in 1964 and upon which the company had paid the tax due. It is not to be overlooked that by April 15, 1964 the company was obliged to file its 1964 return since that was the 15th day of the third month following the end of the company's fiscal year, 26 U.S.C. § 6072(b), and it was at that time as well that the company was obliged to pay the tax liability shown to be due by that 1964 return. 26 U.S.C. § 6151(a).

In giving coherence to the net operating loss carry back provisions, however, Congress provided by 26 U.S.C. (Supp. V) § 6411, for tentative carry back adjustments to be set in motion by the filing by the taxpayer of an application for such adjustments. Section 6411(b) provides that within 90 days from the filing of the application for the tentative carry back the Internal Revenue Service must check the application solely for mathematical errors and then refund "the amount of the decrease in the tax attributable to such carry back upon the basis of the application."[5] Under the regulations which implement the bare bones of that statute, 26 C.F.R. § 301.-6213(1) (B) (2) spells out the tentative character of the refund for it does not constitute a definitive allowance of the deduction nor a finding that the taxpayer's claim is proper. Interest is payable on the refund but it is measured from the close of the loss year rather than from the year to which the deduction has been carried back. 26 U.S.C. (Supp. V) § 6611(f) (1).

This statutory and regulatory scheme would tend to suggest Congressional solicitude for the taxpayer whose financial status is parlous by reason of loss and

5. This is the so-called "quick refund". In re Able Roofing & Sheet Metal Co., 425 F.2d 699 (5th Cir. 1970) at fn. 5. This case will be dealt with *infra*.

who needs the ready benefit of moneys ultimately determined to be his.

Thus the tentative allowance by the Internal Revenue Service of taxes paid in excess of those that were due years before, based upon losses years later, must be pitched to events of the loss year. And in the case at bar, this means 1967. Obviously the company could not have utilized its net operating loss in 1967 against 1967 income for there could not have been earned income. All that the loss did was eliminate taxable income for 1964 as an act of Congressional grace.

It was only upon the Internal Revenue Service's audit of the 1967 return that it was determined to disallow the deductions which yielded a loss result. Sufficient disallowance resulted in total elimination of the loss which, of course, negated its use as a net operating loss carry back to 1964. When that eventuated, the company became liable to return to the government the moneys which the company had only tentatively received until the necessary auditing procedures had been concluded. The auditing, deficiency, administrative review and assessment procedures require a holding that the operative year is 1967 and that 1964 enters the picture only insofar as it may be affected by the 1967 events of the company and by the subsequent procedures of the Internal Revenue Service. See, e. g., 26 U.S.C. §§ 6212 (deficiency notice), 6213(a) (Tax Court challenge by the taxpayer), 6213 (a) and 7421(a) (restraints on collection), 6213(c) and 6155(a) (notice and demand for payment). The sum of those procedures is that no assessment may be made in the usual case until expiration of 90 days from the deficiency notice. 26 U.S.C. §§ 6501, 6502(a), 6303(a), 6212–6213, 6331(a).

For purposes of the reach of Section 17(a) in the facts at bar, "legally due and owing" must be held to mean that point in time when all the intricate procedures called for by the Internal Revenue Code thicket have been concluded and the determined liability assessed.

See Matter of Ingersoll Co., 148 F.2d 282 (10th Cir. 1945). In the context of this case, that is 1969 (¶ 13 of the stipulation) and the assessment then made is referrable at the earliest to the 1967 return. The 1964 tax posture of the company is irrelevant except as it might be affected by that 1967 return and what it disclosed. In adding the Section 64(a) (4) phrase to Section 17(a), Congress evidenced no purpose to change its settled meaning. Manhattan Properties, Inc. v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 (1934).

The fact that the assessment is based on a disallowed refund does not mean that it is any less a tax for purposes of Section 17(a) and Section 64(a) (4). A tax for bankruptcy purposes includes any pecuniary burden by whatever name it may be called. United States v. New York, 315 U.S. 510, 515–516, 62 S.Ct. 712, 86 L.Ed. 998 (1942). The effort by the government to obtain the revenue by denying credit against prior income tax arising from carry back losses "must be regarded as the levying of a tax * * * " United States v. New York, supra, at 517, 62 S.Ct. at 716. What was once collected as a tax and paid into the treasury as such does not undergo a metamorphosis by reason of the manner of its subsequent repayment to the taxpayer, and the fact that Congress failed to specifically label the refund as a tax does not preclude a holding that this assessment is for a tax within the meaning of the Bankruptcy Act. Matter of Siegelbaum, Inc., 38 F.Supp. 1009 (D.C. Conn.1941).

This construction of the 1966 version of Section 17(a) is not at war with Congress' purposes in enacting the 1966 changes. While it is true that the changes were directed, in part, to avoid the accumulation of stale taxes as a yoke on the neck of the honest "private individual or the unincorporated small businessman," Senate Rep. 1158, supra, at 2, which frustrated his "financial rehabilitation," the court's ruling does not defeat that purpose.

This is so for two reasons. First, the 1967 assessment at issue here cannot be said to be an unconscionable accumulation of a stale tax. It is a 1967 tax, not a 1964 tax, and therefore is well within the three year period beyond which the taxing authority was to lose its priority. Although the legislative history does show that the three year period was thought sufficient to permit the full sweep of the audit and assessment procedures of the Internal Revenue Code, it cannot be gainsaid in the case at bar that what was audited was the company's 1967 return. The 1964 return was purely passive no matter how it may have been affected by what was audited. Indeed the court's construction is supported by 26 U.S.C. (Supp. V) § 6501(h) providing for a three year period in loss carry back situations measurable from the loss year—here, 1967.

Secondly, Congress was concerned with those who needed relief from a tax burden in furtherance of their rehabilitation—individual bankrupts. The corporate bankrupt "normally ceases to exist upon bankruptcy and unsatisfied tax claims * * * are without further recourse * * *", Sen.Rep. 1158, *supra*, at 2. Hence, nothing herein defeats the purpose of "fairness to individuals" for this bankrupt is a corporation and it is the rare bankrupt corporation which seeks to avail itself of the provisions of Section 14(a) of the Act, 11 U.S.C. § 32(a), requiring corporations to specifically seek discharge. That the rehabilitation purpose is not to override Congress' concern with the financing of government is clear from Bruning v. United States, 376 U.S. 358, at 361, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). That concern was noted in Sen.Rep. 1158, *supra*, and in the debates, *e. g.*, 112 Cong. Record, Part 10, pp. 13809–13812.

Nor is the effect of the concomitant amendment to Section 64(a) (4), the impulse for which was Congress' desire to implement a second fundamental policy—distribution among general creditors—defeated by this court's construction of Section 17(a).

The priority creditor system has always been a part of bankruptcy law. The limitation on old taxes expresses the outside reach of Congress' desire to yield more to general, non-priority creditors by having "the government as a creditor * * * bear part of the economic burden of business failures through the loss of some of its tax claims which it has allowed to accumulate * * * " Sen.Rep. 1158, *supra*, at 4. But to state this desire does not indicate negation of equally valid policies. The reading I give to Section 17(a) harmonizes all policies and purposes without doing violence to the 1966 amendments or to the statutory scheme of the revenue power.

Were this a case of first impression, this court would have less difficulty with the result it reaches on the "loss deficiency" issue. But the Court of Appeals for the 5th Circuit, in a case seemingly on all fours with this one, comes to a contrary result and that holding must be dealt with. United States of America v. Gordon as trustee of Able Roofing & Sheet Metal Company, Bankrupt, 425 F.2d 699 (5th Cir. 1970).

There the court read the 1966 amendment as one designed "to further the fundamental policy of the Bankruptcy Act of providing a means for the effective rehabilitation of bankrupts", 425 F.2d at 701, and cited the comment by the Judiciary Committee that "consistency with the rehabilitory purpose of the Bankruptcy Act, as well as fairness to individuals demands some time limit upon the extent of taxes excepted from discharge". From that, the court concluded that the timing of the government's claim for a disallowed loss carry back refund had to be measured from the year upon which the loss carry back operated, rather than, as the government insisted, on the loss year or the refund year. An examination of the decision reveals that the case involved the reach of the amendments on dischargeable debts of individual bankrupts, a distinction which impelled the court to its result by reading the amendment compati-

bly with the dominant purpose of the statutory change. Indeed a district court in In re Michaud, 317 F.Supp. 1002 (W.D.Pa.1970), noting the distinction between the individual bankrupt and "a corporate debtor where the dischargeability feature was meaningless and only the decision on priority had any practical effect," 317 F.Supp. at 1005, ruled that "the remedial purpose of the statute", 317 F.Supp. at 1007, required an expansive reading of amended Section 17(a) notwithstanding it might not accord with every broad intention of the amendment.

In the case before this court, we deal with a corporate entity which "normally ceases to exist upon bankruptcy * * *", Sen.Rep. 1158, *supra* at 2, so that, unlike the individual bankrupt, there is nothing to rehabilitate. Hence the 5th Circuit Court of Appeals' holding with its magnified emphasis on rehabilitation should be read as being limited to cases where rehabilitation has relevance— those of the individual bankrupt.

The short of it is that the amending language is simply not well enough designed for taking into account the numerous factors to be weighed including the application of the Internal Revenue Code audit procedures on loss carry back applications in furtherance of the integrity of the revenue. Accordingly it was necessary to distinguish between the individual and the corporation.

Only recently the Supreme Court in Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), took pains to depart from a settled rule involving a corporate bankrupt en route to a holding for an individual that the term "property" should be read narrowly in keeping with the rehabilitory purpose of the Act.

But if I have drawn an impermissible distinction, then with the utmost deference, this court must decline to follow the rule of the 5th Circuit Court of Appeals in *Able Roofing*.

The court there was driven to the result it reached by emphasis solely on the rehabilitory character of the amendment. But the court overlooked a second purpose of that amendment plainly expressed in the legislative history—that of limiting the reach of the government's priority for taxes in order to yield more to general unsecured creditors. In other words, hand in hand with the desire for rehabilitation of individuals, Congress has also purposed to limit government as a priority claimant under Section 64(a) (4). Sen.Rep. 1158, *supra*, at 3–4. But the 5th Circuit Court of Appeals ruling does not even embrace that purpose fully for, while refusing to conclude that the assessment for the improperly paid refund was a tax, the court concluded that the government had a claim, but not a tax claim. It is difficult to see how this comports with that other purpose of the 1966 amendment. If the court is correct in concluding that what the government had there was not a tax claim but some other claim, then it should also follow that that other claim would be entitled to priority under Section 64(a) (5) of the Bankruptcy Act in which event it would come after the tax priority of Section 64(a) (4), but still before general unsecured creditors in distribution of the bankrupt's assets.

In my view the Court of Appeals for the 5th Circuit failed to apprehend the impact of its decision on the auditing procedures of the Internal Revenue Code in light of the concerns expressed that the revenue power was to be impaired no more than was thought necessary. And the impairment of the revenue power was given only to the extent of precluding priority to stale accumulated tax. It cannot be said that a 1967 or 1968 assessment of an improper refund based upon 1967 events relative to a paid 1964 tax constitutes an impermissible accumulation of a stale tax. Clearly, the operative year on such facts must be the loss year as has already been seen.

Consequently, the trustee's challenge to the priority classification of so much of the United States' claim as relates to the "loss deficiency"—$4,772.12 to-

gether with appropriate interest—must fail.

I now turn to the second legal issue— the "deduction deficiency", involving $735.90 of the claim.

The operative facts for resolution of the second issue in the instant controversy have also been agreed upon. It appears that in connection with the company's application for refund of taxes paid in 1964 by reason of losses occurring in 1967, the Internal Revenue Service conducted not only an audit of the return of January 31, 1967 but also of the January 31, 1964 return. It has previously been seen in connection with the audit of the 1967 return that the role of the 1964 taxes was purely a passive one in that the amount paid as taxes for that year could be finally refunded after allowance of the 1967 return items showing losses sufficient to call for application of the loss carry back rules.

But the audit of the 1964 return was different for the result of what the audit there disclosed would have an impact only on the items set forth in the 1964 return and on the amount of due taxes reported. As a result of the audit of the 1964 return, certain expenses taken by the company were disallowed with the result that taxable income was increased by nearly $5,000 from the amount reported to the government on that return. Various credits were authorized and applied resulting in a tax deficiency. The company was advised on June 4, 1969 of a total deficiency of $5,508.02 "for the taxable year ended January 31, 1964 * * *" (Exh. H to Stipulation of Facts), of which only $735.90 is involved in this second legal issue. An assessment of that amount plus interest followed. (Exh. I to Stipulation of Facts) [6]

It seems clear that this second legal issue involves disallowance of entries in

the 1964 return and is not to be equated with the first issue involving the 1967 return. No question is raised as to the timeliness of the 1969 assessment within the meaning of relevant statutes of limitation applicable to tax cases. This is so because in connection with the application for refund of 1964 taxes based upon 1967 losses the company and the District Director of the Internal Revenue Service executed consents fixing the period of limitation on further assessment of taxes. (Exhs. D, E, F and G of Stipulation of Facts)

But the erstwhile debtor and now the trustee insist there is indeed a relevant statute of limitations imposed by the 1966 amendment to Section 17(a) of the Bankruptcy Act and that it requires disallowance as priority of the "deductions deficiency" resulting from the audit of the 1964 return. They say it is a stale tax in that it became legally due and owing in 1964 more than three years before the filing of the 1964 petition. The government contends, however, that the facts controlling this issue come squarely within clause c of the proviso to Section 17(a) as amended. Insofar as it is pertinent to this issue, the proviso and that clause read as follows:

> "*Provided, however,* [T]hat a discharge in bankruptcy shall not release a bankrupt from any taxes * * * which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, * * *"

Clauses a, b, d and e of the proviso are not relevant to this controversy.

The trustee's challenge to priority status of so much of the government's claim as relates to the "*deductions deficiency*" is unavailing.

---

6. As the company had already filed its petition in this court, the assessment was the "immediate assessment" contemplated by 26 U.S.C. § 6871(a). Clearly the company's petition for arrangement under

Chapter XI of the Bankruptcy Act is "the filing * * * of a petition of * * * any taxpayer in any other bankruptcy proceeding * * *".

I follow the decision of the Court of Appeals for the 5th Circuit in Matter of Indian Lake Estates, Inc., United States of America v. Stewart, 428 F.2d 319 (1970), cert. den. 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (Dec.1970), a case on all fours with the instant one.

It is plain that the company's taking of improper deductions had an impact on its reportable taxable income and in turn on the taxes due. It follows that the company did not make proper report on its return.

We have previously noted that the structure of the Internal Revenue Code is pitched to a voluntary self assessment income tax system, the integrity of which is to be protected notwithstanding the pure bankruptcy aspects of the 1966 amendments. See 112 Cong.Record, Part 10, p. 13812. Indeed, as Senator Ervin noted in the debates "What this bill [1966 bankruptcy legislation] seeks is to strike a balance between the demand for rehabilitation of the bankrupt and the just claims of the federal government" 112 Cong.Record, Part 10, pp. 13809–13810. (Matter in brackets added). Manifestly, the government is not to be imposed upon by preclusion from an examination of a tax return submitted by a taxpayer, the content of which is only what that taxpayer wishes to disclose.

I conclude, as did the Court of Appeals in *Indian Lake*, "that the reason for the assessment arose because of a difference of opinion in the resultant tax liability properly attributable to a non-fraudulent return. It is obvious that the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated as correct by the Director. It is equally transparent that it was therefore an assessment for an amount of taxes not reported on a return made by the bankrupt". 428 F.2d at 324.

While the Court of Appeals did acknowledge that its reading of the statute did not accord with every broad intention announced by Congress in the 1966 amendment, still one broad purpose was not frustrated by such reading. The bankrupt there, as is the bankrupt here, is a corporation and "[E]ffective rehabilitation was pointedly intended to provide relief for individual bankrupts." 428 F.2d at 322, and discussion, *supra*.

Since the 1964 return was based on entries made from information exclusively within the company's ken, it follows that audit procedures must be upheld. Any other view would defeat the integrity of the revenue and invite fraud or tax evasion, a result Congress sought to avoid despite its desire to protect the honest individual from the oppressive impact of stale accumulated taxes. Sen. Report 1158, *supra*, at 2–3.

There is internal evidence in the Internal Revenue Code itself to support the view that the audit procedures are not to be frustrated by a reading of clause (c) of the proviso to Section 17(a) which is solely bankrupt oriented. The Code speaks of "tax shown on the return," *e. g.*, 26 U.S.C. §§ 6201(a) (1), 6211(a), and of such taxes as are imposed by law, *e. g.*, 26 U.S.C. § 6211(a), despite what the taxpayer might show on his return. I read clause (c) to mean that "taxes * * * not reported on a return" are those taxes properly determined after an audit discloses erroneous deductions resulting in a lesser "tax shown on the return" filed by the taxpayer.

What has just been said satisfies one prong of clause (c) of 17(a)'s proviso for it requires not only that the taxes not be reported on the bankrupt's return but also that they not have been assessed prior to bankruptcy by reason of a prohibition on assessment pending exhaustion of available judicial or administrative remedies. I turn now to that.

It is recognition of the government's right to audit a taxpayer's return system which lies at the heart of this court's determination that the taxes assessed in 1969, following audit, were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or ju-

dicial remedies within the meaning of clause (c) of the proviso to amended Section 17(a) of the Bankruptcy Act. The assessment of a tax is but a step, and among the last ones at that, in the scheme set up, administratively and judicially to protect the revenue power exercised by Congress in its continuous concern with the tax statutes.

It requires no citation of authority to state that an assessment of a tax by the Internal Revenue Service is necessarily pitched to some prior administrative finding including those flowing from the audit process upon which to rest the determination that there is a deficiency at all in the tax which is lawfully due by the taxpayer above what is shown by the taxpayer on his voluntary return.

Accordingly, 26 U.S.C. § 6213(a) prohibits assessment of such determined deficiency until the taxpayer has first been advised formally of the deficiency determination by the Service following the conclusion of its audit procedure. The notice of deficiency called for by 26 U.S.C. § 6212(a) is the statutory notice upon the receipt of which the taxpayer may pay the deficiency or he may institute such remedies as are made available to him by 26 U.S.C. § 6213(a) should he contest the results of the audit.

Since a deficiency is defined by 26 U.S.C. § 6211(a) to be the lawful tax liability over the amount of the tax reported by the taxpayer on his return, it follows that a deficiency *cannot* be determined solely by reference to the items the taxpayer has disclosed in his tax return.[7] It must abide the analysis of their validity in law and fact.

What all this means is that the ultimate determination of a deficiency lies with the Internal Revenue Service. The audit procedure itself is not a one sided *ex parte* process. The taxpayer may be called upon to explain the content of his return. He may be asked to substantiate his entries. He, in turn, may ask that the audit take a different tack then it is taking. But it is not until the audit has been concluded that the taxpayer is formally advised that there is indeed a deficiency. The value of the administrative scheme has been judicially recognized as a salutary one. Luhring v. Glotzbach, 304 F.2d 560, 564–565 (4th Cir. 1962).[8]

But until the taxpayer has received the statutory notice of such deficiency, there can be no assessment until sufficient time has passed within which the taxpayer may seek judicial review. If judicial review is sought, then there can be no assessment until the decision of the Tax Court has become final including exhaustion of judicial remedies.

This is not to state that under certain circumstances an assessment cannot be had before. The so called jeopardy assessment called for by 26 U.S.C. § 6861(a) is such an instance. So, too, the immediate assessment following bankruptcy falls outside the prohibitions against assessment called for by 26 U.S.C. § 6213(a). See In re Indian Lake Estates, etc., *supra*, 428 F.2d at 323–324. But these exceptions are irrelevant here.

There is no dispute that the assessment in the case at bar followed the deficiency notice which went to the company following the audit of the 1964 return and the disallowance of some of the deductions taken therein which yielded the deficiency. It is true that the government's assessment came prior to

---

7. The mathematical error situation contemplated by 26 U.S.C. § 6213(b) (1) is not relevant in the case at bar.

8. The administrative process, including the "conference" stages which may take place during and following the auditing of the return discloses the extent to which audited taxpayers and the Internal Revenue people resolve disputes without recourse

to the courts. The 1968 Annual Report of the Internal Revenue Service shows that of 83,500,000 returns filed, only 2,738,000 were audited, but that only 1,388 cases were tried in the courts. Annual Report at 20, 24, 32, 111. These cases might have been started earlier than the year for which the Report is made, but the overall figures are too revealing to be dismissed out of hand.

the expiration of the statutory waiting period within which the company could have sought review in the Tax Court. This was so because by the time the audit had been completed and the deficiency notice sent, the company had already been in this court for more than a year in pursuance of its petition for an arrangement under Chapter XI.

But the time of the assessment is by the way for what controls here is not when the assessment did occur but rather whether or not prior to the filing of the petition for arrangement the taxes ultimately found to be deficient could have been assessed.

I assume, as the Court of Appeals for the 5th Circuit in the *Indian Lake Estates* case did, that the 1966 bankruptcy amendments were not meant to be in derogation of what the Internal Revenue Code plainly says. That statute clearly states that an unassessed federal tax liability is prohibited and therefore not discharged if the statutory notice of deficiency has not gone out regardless of how old the tax liability may be. 428 F.2d at 324. Certainly this is so where an audit is pending pursuant to the government's desire to take a hard look at a business tax return and where administrative negotiations with extensions of the statute of limitations are pending and executory. 428 F.2d at 324. And until the audit has been concluded, and decisions made as to whether there is any deficiency in taxes at all (for, surely not all audits mandate that result), there can be no deficiency noticed to the taxpayer which he may pay or contest. Without a deficiency notice there can be no assessment; even with a deficiency notice, assessment may be prohibited temporarily. The pendency of all the steps before assessment can lawfully be made must be held to be the pendency of administrative remedies available to the bankrupt within the meaning of clause (c) to the Section 17(a) proviso.

Since both prongs of the proviso of clause (c) have been satisfied, it follows the taxes assessed are not dischargeable

under Section 17(a) (1) and retain their priority under Section 64(a) (4).

Having therefore concluded both issues against the trustee, I require an order which shall bear a decretal paragraph that the government's last amended claim is entitled to priority in all respects.