In the Matter of **INDIAN LAKE ESTATES, INC., Bankrupt.**

**UNITED STATES of America, Appellant,**

v.

**Ernest L. STEWART, Trustee in Bankruptcy, Appellee.**

No. 27877.

United States Court of Appeals, Fifth Circuit.

June 24, 1970.

**320**

John L. Briggs, U. S. Atty., Tampa, Fla., Johnnie M. Walters, Asst. Atty.

Gen., Lee A. Jackson, Harry D. Shapiro, Edward F. Boardman, U. S. Atty., Meyer Rothwacks, Crombie J. D. Garrett, Karl Schmeidler, Attorneys, Department of Justice, Washington, D. C., for appellant.

Don M. Stichter, Tampa, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This mortal court must attempt to divine the intent of Congress in a situation where that intent may well be known only to the Divine. We must say what Congress meant by two brief phrases in a technical proviso passage of an amendment to the dischargeable debt provisions of the bankruptcy laws when an exhaustive examination by counsel for both parties and this Court of the history of the legislative processes leading to this enactment fails to disclose that the meaning or the significance of the language critical to our decision, was ever really considered. The circumstances of such an obscure history requires that the plain meaning of the language used must prevail, and this means the Referee in Bankruptcy and the District Court were in error. Since the taxes in contention here were not "reported on a return made by the bankrupt" and were not assessed prior to bankruptcy "by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt," they are not dischargeable in bankruptcy and are entitled to priority. We therefore reverse.

An examination of income tax returns filed by Indian Lake Estates, Inc., for the corporate fiscal years ending July 31, 1957, 1958 and 1959 disclosed questions as to allowable deductions claimed and the treatment of certain income items. Routine administrative adjustment procedures within the Internal Revenue Service were commenced. The matter involved substantial legal and

factual issues and undoubtedly was complicated by related litigation.[1]

In order to prevent the interruption of audit and conference procedures then in process, the taxpayer and the Internal Revenue Service executed agreements on standard printed forms (Form 872) entitled, "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax". A total of fifteen such agreements were executed which, combined, had the effect of extending the assessment period for all corporate fiscal years involved to June 30, 1966.

Following an unsuccessful attempt to reorganize under Chapter X of the Bankruptcy Act,[2] Indian Lake Estates, Inc. was adjudicated a bankrupt on April 16, 1965. No notice of deficiency[3] or assessment of tax[4] for the fiscal years in question had been given or made prior to this adjudication of bankruptcy, but subsequent thereto the United States filed proof of a priority claim for income taxes for these three years together with a claim for additional employment taxes incurred by the bankrupt corporation in 1964 and 1965. The trustee objected to according priority status to the claim of the United States, contending that the income taxes covered were dischargeable debts under the provisions of § 17a of the Bankruptcy Act[5] and, therefore, not entitled to a priority status under § 64 of that Act.[6] First the Referee and then the district court sustained this objection. The United States appealed that last decision here.

No issue is raised as to the correctness or amount of the taxes claimed.

The only issue posed is dischargeability *vel non*. Its legal corollary, priority, follows as of course from the language of § 64. The ultimate question then is this: Do these 1957, 1958 and 1959 taxes enjoy a priority claim upon the assets of the bankruptcy or does the United States have to take its position in the hodge podge of common creditors and accept a pro rata distribution?

The answer turns entirely upon the meaning of § 17a of the Bankruptcy Act.[7]

In pertinent part, that section reads:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to

1. Indian Lake Estates, Inc. v. Litchman, 114 U.S.App.D.C. 90, 311 F.2d 776 (1962); Indian Lake Estates v. Ten Individual Defendants, 121 U.S.App.D.C. 305, 350 F.2d 435 (1965); Indian Lake Estates, Inc. v. Special Investments, Inc., 154 So.2d 883 (Fla.App.1963).

2. 11 U.S.C.A. § 501 et seq. (1967). The District Court refused to approve the petition and dismissed the proceeding.

3. Int.Rev.Code of 1954, § 6212.

4. Int.Rev.Code of 1954, § 6201(a) (1).

5. 11 U.S.C.A. § 35a (Supp. 1970).

6. 11 U.S.C.A. § 104(a) (4), Supp. (1970).

7. We have considered the possible effect of the general priority statute—31 U.S.C.A. § 191 (1954). However, 11 U.S.C.A. § 104 (Supp. 1970) now disestablishes the priority of taxes over general unsecured creditors as to taxes discharged by bankruptcy, to the extent that it limits the priority of taxes over general creditors to those taxes which are not dischargeable. To this extent the later statute, 11 U.S.C.A. § 104 (Supp. 1970), constitutes a *pro tanto* amendment of 31 U.S.C.A. § 191 (1954).

which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over; * * * *And provided further,* That a discharge in bankruptcy shall not release or affect any tax lien; * * *."

The United States concedes for the purposes of this action a question that could be fraught with difficulty, i. e. that the taxes in question became legally due and owing more than three years prior to bankruptcy. No issue is presented as to any failure to file a return or as to the filing of a false or fraudulent return or as to any attempt to evade or defeat taxes. The taxes here involved were not collected or withheld from others. The Director of Internal Revenue did not make an assessment prior to bankruptcy through regular or jeopardy processes and, that being true, no notice of tax lien was ever filed of record.

Our concern in the case sub judice may be further narrowed to the meaning of proviso (1) (c). This decision then turns upon whether the claimed income taxes were (i) not reported on a return made by the bankrupt, and (ii) not assessed prior to bankruptcy by reason of a prohibition on assessment pending exhaustion of administrative or judicial remedies available to the bankrupt.

Although both parties cite us to testimony, committee reports and debates, which we have examined together with other such material extending back to the introduction of this legislation in the First Session of the Eighty-fifth Congress, we fail to perceive any really meaningful legislative history that would assist in the interpretation of these passages.

For several sessions prior to the second session of the Eighty-ninth Congress, similar legislation had passed the House of Representatives but failed to clear the Committee on Finance of the Senate.[7A] It was apparently consigned to a similar fate in 1966 when a companion Senate bill [8] and the present law, which then had already passed the House of Representatives,[9] were referred to the Senate Committee on Finance and received unfavorable reports.[10] The situation changed dramatically however when the Finance Committee was discharged and the House and Senate bills were then referred by the Senate to the Senate Committee on the Judiciary, which rendered a unanimously favorable report and brought the legislation to the floor of the Senate. Its report [11] declared the fundamental policy of the Bankruptcy Act to be twofold: (1) the effective rehabilitation of the bankrupt, and (2) the equitable distribution of the bankrupt's assets among the creditors.

Effective rehabilitation was pointedly intended to provide relief for *individual* bankrupts. A contrast was drawn between *corporate* bankrupts who carried no practical burden even when saddled with enormous after-bankruptcy tax liabilities, since their artificial entity could be dissolved. Natural persons, on the other hand, who went into bankruptcy with large tax debts remained burdened with such debts and their intended and desired rehabilitation was inequitably hindered.

The problem of equitable distribution of assets among creditors had a twofold aspect. The first aspect concerned today's increasingly large tax debts which enjoyed a priority status ahead of gener-

**7A.** The entire history of these amendments goes back over twenty years. See Kennedy, The Bankruptcy Amendments of 1966, 1 Ga.L.R. 149, 171–172.

**8.** S. 976, 89th Cong., 2d Sess. (1966).

**9.** H.R. 3438, 89th Cong., 2d Sess. (1966).

**10.** S.Rep. Nos. 996 & 998, 89th Cong., 2d Sess. (1966). *See also* S.Rep. No. 999, 89th Cong., 2d Sess. (1966) U.S.Code Cong. & Admin. News, p. 2442.

**11.** S.Rep. No. 1158, 89th Cong., 2d Sess. (1966) U.S.Code Cong. & Admin. News, p. 2468.

al creditors. Second, such tax claims could be of an entirely secret nature, unknown and unknowable to those who dealt with the bankrupt and extended him credit. Congress, in the course of debates and reports, frequently said it intended for the 1966 amendments to press taxing authorities to act more expediently in dealing with tax claims, both so that they would not cumulate to ruinous proportions and so that their existence could be more promptly known to general creditors. It was pointed out that other nations had long limited the number of years that tax debts could enjoy priority under their respective bankruptcy laws and it was felt the United States could and should do the same.

Obviously, the damage to the public purse was the balancing policy consideration. Congress was unwilling to eliminate all priority and ultimately settled on a time limit which it thought struck a proper balance. Provisos were added to prevent granting any benefit resulting from fraud or tax evasion. The time limit, which had been one year in the bill as originally presented, was extended to three years to permit a time comparable to the statute of limitations on tax debts for audit and examination.

But these broad generalizations are, for all practical purposes, next to meaningless for the problem at hand. From all we have been able to discover, the specific proviso which controls the case at bar just never received direct public congressional attention or explication.

Finding no helpful legislative history, we must look to the plain meaning of the enactment. *See* Gemsco v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945); cited with approval in Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949).

Since the Referee and the court below considered only whether there was a prohibition on the assessment of taxes pending the exhaustion of administrative or judicial remedies, we shall treat with that point first. Int.Rev.Code of 1954, § 6213(a) [12] very clearly imposes prohibitions on the assessment of taxes:

(1) unless and until a notice of deficiency (most frequently referred to as the 90-day letter) is sent to the taxpayer,

(2) until the expiration of the waiting period required if no petition be filed in the Tax Court after such notice of deficiency has been served, and

(3) if a petition be filed in the Tax Court, until the decision of the Tax Court becomes final.

This prohibition is not absolute since assessment can be made if the collection of the tax is found to be in jeopardy. Int.Rev.Code of 1954, § 6861(a). The availability of the jeopardy assessment procedure does not, however, affect the conclusion that the § 6213(a) requirement is a "prohibition." This is because "jeopardy assessments * * * are

12. *"Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B [or chapter 42] and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court." Int.Rev.Code of 1954, § 6213(a).

*continuing* procedures. A taxpayer may achieve removal of a jeopardy assessment by proving no jeopardy of collection actually exists. He can then institute lengthy defensive maneuvers, possibly taking years, during which period the taxpayer's financial conditions may so deteriorate that a jeopardy assessment could subsequently be gained." Lurvey, Tax discharge in bankruptcy: how the new rules work; difficulty in planning, 28 J.Taxation 242, 243 (1968). *See also* Int.Rev.Code of 1954, § 6863: Plumb, Federal Liens and Priorities—Agenda for the Next Decade, 77 Yale L.J. 228, 266–268 (1967).

Thus if it is assumed that the draftsmen of the 1966 amendments understood tax law and are deemed to have meant what they plainly said, an unassessed federal tax liability is prohibited and therefore not discharged if the "90-day letter" has not been sent out, regardless of how old the subject tax liability may be. Certainly this is true in cases such as the one at bar where, due to the complicated nature of the taxpayer's legal affairs, lengthy administrative negotiations with numerous extensions of the statute of limitations are still pending and executory. Most authoritative articles on this subject accord with this interpretation. Plumb, Federal Liens and Priorities—Agenda for the Next Decade, supra: Plumb, Federal Tax Liens and Priorities in Bankruptcy—Recent Developments, Journal of the Nation Conference of Referees in Bankruptcy, April 1969, 37, 43, 44; March, Triumph or Tragedy?—The Bankruptcy Act Amendments of 1966, 42 Wash.L.R. 681, 691–697. *See also* Lurvey, Tax discharge in bankruptcy: how the new rules work; difficulty in planning. Supra, at p. 242.

Since we conclude that the Referee and the district court were in error in ruling that the assessment of the taxes in the case at bar was not prohibited pending exhaustion of administrative remedies, we must reach the second question of law which these authorities pretermitted: were the taxes in the instant case taxes which were "not reported on a return made by the bankrupt?" We are not presented with a situation where the taxpayer filed a fraudulent or evasive return. It appears that the reason for the assessment arose because of a difference of opinion in the resultant tax liability properly attributable to a non-fraudulent return. It is obvious that the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated as correct by the Director.[13] It is equally transparent that it was therefore an assessment for an amount of taxes not reported on a return made by the bankrupt. The only reported case the parties and this court have found agrees. In re Cohen, 68–1, U.S. Tax Cas. ¶ 9250 (Ref. ND Ga. 1967). A leading text reaches a similar conclusion. 1 Collier, Bankruptcy, ¶ 17.14[4] (14th ed. 1967). *See also* Plumb, Federal Tax Liens and Priorities in Bankruptcy—Recent Developments, supra, at p. 44.

We are well aware that this construction does not accord with every broad intention announced by the Congress. Unrecorded and unpublicized tax indebtednesses can still accumulate (with the combined agreement of the taxpayer and the Director of Internal Revenue to extensions of the assessment of tax) beyond the specified three-year limitation period. Large buildups of taxes without creditor knowledge or knowability are thus possible, but the contrary construction is not as good an answer to this problem. If the Director is required to immediately assess, the interested parties are likely to be worse off in every case.

The assessment is, in fact, the origin of the "secret tax lien" with which Congress was so concerned.[14] If the Com-

---

13. Compare the Definition of a Deficiency, Int.Rev.Code of 1954, § 6211.

14. "Unless another date is specifically fixed by law, the lien imposed by section 6321

missioner were to adopt an arbitrary practice of assessment at the end of three years regardless of whether the amount of tax due has been resolved, potential future creditors will not have any knowledge of the existence of the security interest created. The reason that the taxpayer would fare better if no assessment had been made is because with assessment all of the debtor's property [15] will be subject to the lien where without assessment they would be facing only a priority.[16] Moreover, if the Commissioner wants to protect the tax against the trustee in bankruptcy and thus unsecured creditors, he must give notice of the lien under the provisions of Int.Rev. Code of 1954, § 6321. United States v. Speers, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965). Such publicity could affect the availability of future secured and unsecured credit to the debtor. This could result in financial failure, and all of this when the extent of the tax obligation may not have been fully determined.

Finding that the taxes which are the subject to this appeal were not reported on a return made by the bankrupt and were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." Int.Rev.Code of 1954, § 6322.

15. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax,

or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Int.Rev.Code of 1954, § 6321.

16. A consideration of major importance to those creditors that are given a priority higher than the taxing authorities. See 11 U.S.C.A. § 104 (Supp. 1970).