**In re Carolyn June WUKELIC,**
**Bankruptcy-Appellee,**

v.

**UNITED STATES of America,**
**Respondent-Appellant.**

**No. 75–1811.**

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1976.

Decided Nov. 1, 1976.

**286**

William W. Milligan, U.S. Atty., Columbus, Ohio, Scott P. Crampton, Gilbert E. Andrews, Crombie J. D. Garrett, Karl Schmeidler, Tax Div., Appellate Section, Dept. of Justice, Washington, D.C., for appellant.

Robert J. DeLambo, Edward V. Miller, Worthington, Ohio, for appellee.

Before EDWARDS and ENGEL, Circuit Judges, and GREEN,* Senior District Judge.

EDWARDS, Circuit Judge.

The United States appeals from a judgment discharging an income tax liability entered by a Bankruptcy Court. The bankrupt taxpayer during 1968 was married to Dr. Richard Haley, with whom she filed a joint tax return for that year. The return indicated that all but a small part of the family income was attributable to Dr. Haley's work as a physician. It reported substantial income, the accuracy of which is not in dispute, but also claimed certain business expense deductions arising from Dr. Haley's medical work, a claimed loss for the operation of a farm, and depreciation on an airplane owned by him. The 1968 tax return showed a tax due of $31,701.10, but no tax was paid thereon. The Internal Revenue Service filed notices of a tax lien as to the taxes reported to be due on the tax return. It also disputed the deductions on the 1968 return.

Wukelic subsequently signed two consents to extend the statutory period for the IRS to determine the deficiency and assess the 1968 income taxes. Ultimately, on April 6, 1972, the IRS notified the taxpayers of a proposed deficiency of $80,203.74 for additional taxes, part of which represented a 50% civil penalty. The taxpayers then sought to pursue their internal remedies within the IRS. While they were still pursuing those remedies and before IRS had (or could have) assessed the deficiency, Wukelic, who had by then divorced Dr. Haley, filed a petition in bankruptcy, listing tax debts due the United States in the amount of $31,701.10 and $80,203.74 and seeking discharge of this debt. Subsequently, in the administrative review the IRS reduced the penalty (from fraud to negligence) resulting in a reduction of the $80,203.74 claim to $43,806.06.

The Bankruptcy Court determined that no assets could be recovered out of the bankrupt's estate. The IRS filed proof of its claim and the Bankruptcy Judge determined that the deficiencies in taxes (both the $31,701.10 and the $43,806.06) had become due and owing more than three years before bankruptcy and were discharged. The District Court affirmed. The government appeals as to the $43,806.06 arising out of the disallowance of the claimed deductions.

At issue in this case is the proper interpretation of § 17(a) of the Bankruptcy Act, 11 U.S.C. § 35 (1970):

> *§ 35. Dischargeability of debts—Debts not affected by discharge*
>
> (a) *A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part,* except such as (1) are taxes which become legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes* (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) *which were not report-*

---

* Honorable Ben C. Green, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

*ed on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt . . . .*

§ 17(a)(1)(c) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1)(c) (1970). (Emphasis added.)

The government argues that its claim against the bankrupt was within the exception stated in (1)(c) above and was not discharged. Bankrupt Wukelic contends that the additional taxes claimed became due and owing more than three years prior to the bankruptcy and therefore were dischargeable debts under § 17(a). She also claims she "reported" the taxes now at issue within the meaning of § 17(a)(1)(c).

The application of proviso (1)(c) in § 17(a) of the Bankruptcy Act to similar facts has only been considered by two circuits, both of which have sustained the government's position; *In re Indian Lake Estates, Inc.,* 428 F.2d 319 (5th Cir.), *cert. denied sub nom., Stewart, Trustee in Bankruptcy v. United States,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970); and *In re Michaud,* 458 F.2d 953 (3d Cir.), *cert. denied sub nom., Michaud v. United States,* 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). *See also* 1A Collier, Bankruptcy (14th ed., 1976), Sec. 17.14[4] at 1620–22; *In re Cohan,* 68–1 U.S. T.C. ¶ 9250 (Ref.N.D.Ga.1967); *In re Laytan Jewelers, Inc.,* 332 F.Supp. 1153 (S.D.N.Y. 1971); *In re Ferwerda,* 75–2 U.S.T.C. ¶ 9568 (E.D.Wis.1975).

The District Judge in finding for the taxpayer in this case discussed and rejected the reasoning of both of these leading cases:

Since it is conceded that the taxes in question were due and owing more than three years at the time the petition in bankruptcy was filed and since it is also undisputed that no assessment was made prior to bankruptcy because administrative remedies were being pursued by Dr. Haley, the issue may be narrowed to a determination of the words "taxes . . . not reported on a return" in the proviso.

Briefly stated, the bankrupt-appellee contends, and it was so held by Judge Dilenschneider, that she had "reported" her taxes when she completely stated all her gross income and the basis for the deductions claimed. The United States argues, however, that because the actual tax liability was not properly stated, the bankrupt did not, in fact, "report" her taxes within the meaning of the § 17a(1)(c) proviso.

Judicial interpretation of these words has been limited and divided. Equally scarce is any significant legislative history that would be of help in deciding the interpretation to be given these words. As the United States Court of Appeals for the Fifth Circuit commented:

From all we have been able to discover, the specific proviso which controls the case at bar just never received direct public congressional attention or explication.

*In re Indian Lake Estates, Inc.,* 428 F.2d 319, 323 (5th Cir. 1970), *cert. denied* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970). In that case the Fifth Circuit proceeded to conclude that the taxes were not dischargeable. The Court stated:

It is obvious the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated as correct by the Director. It is equally transparent that it was therefore an assessment for an amount of taxes not reported on a return made by a bankrupt.

*In re Indian Lake Estates, Inc., supra,* at 324. Contrary to the case at bar *In re Indian Lake Estates, Inc.* dealt with a corporate debtor.

The United States Court of Appeals for the Third Circuit came to a similar conclusion regarding non-dischargeability of an individual debtor's taxes by applying the common rule of statutory construction that words are presumed to be used in "their ordinary and usual sense, and with the meaning commonly attributable to them." *In re Michaud,* 458 F.2d 953,

957 (3d Cir.) *cert. denied* 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972) (citations omitted). Finding that a dictionary defined "report" as: "to give a formal or official account or statement of; state formally," the Third Circuit concluded that as used by Congress "report" connoted a formal presentation of the tax liability rather than an informal presentation of information which gave rise to the liability. With all due respect to the Third Circuit, I feel compelled to agree with the Bankruptcy Judge herein that neither the rationale nor the result of *Michaud* is persuasive when applied to the particular facts of this no-asset case. The rationale of *Michaud* ignores the fundamental purpose behind the Bankruptcy Act: the effective rehabilitation of the individual bankrupt. Because of this purpose, its provisions are remedial in nature and as such should be construed liberally; conversely, exceptions to its remedial provisions should be construed narrowly. See *In re Michaud*, 317 F.Supp. 1002 (W.D.Pa.1970) *reversed on other grounds* 458 F.2d 953 (3d Cir. 1972), and cases cited therein. The government's position would not only emasculate the remedial nature of the Bankruptcy Act but would make it contingent upon the intricacies of the tax law as to whether certain claimed deductions were allowed or disallowed by the IRS.

## THE ORDINARY MEANING

■ With respect for the point of view and reasoning of the District Judge, we nonetheless find ourselves in agreement with the results in the *Indian Lake* and *Michaud* cases. We recognize, of course, that in 1966 Congress did seek to ameliorate the position of taxpayers *vis-a-vis* the government whose tax claims up to then were completely exempt from discharge in a bankruptcy proceeding. Our primary reasons for reversing are that the ordinary meaning of the language Congress employed in § 17(a)(1)(c) seems to us to prohibit releasing the bankrupt in this case from her tax liability and we find no legislative history to support a contrary conclusion.

In applicable part the proviso in § 17(a) says:

> *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes . . .
>
> (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt . . . .

§ 17(a)(1)(c) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1)(c) (1970).

Both parties agree that the taxes now at issue were not assessed by reason of the prohibition referred to in the second clause quoted above. Hence, our real question is whether or not the taxes now in dispute were "taxes" which were "not reported" on a return made by the bankrupt. We believe these key words should be construed in relation to their ordinary meaning.

■ At the outset we observe that the "taxes" which were "reported" as due on this bankrupt's return were $31,701.10. The bankrupt's liability for this sum has been discharged as a result of the bankruptcy proceeding and is not in dispute here. What is in dispute are $43,806.06 of taxes (and penalties) due as a result of an assessment based on the IRS disallowance of three categories of deductions claimed by the Haleys. As we see the matter, these taxes had never been "reported" by the Haleys on their return.

The Fifth Circuit in *Indian Lake* followed a similar analysis of the statutory language:

> We are not presented with a situation where the taxpayer filed a fraudulent or evasive return. It appears that the reason for the assessment arose because of a difference of opinion in the resultant tax liability properly attributable to a nonfraudulent return. It is obvious that the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated

as correct by the Director. It is equally transparent that it was therefore an assessment for an amount of taxes not reported on a return made by the bankrupt. *In re Indian Lake Estates, Inc.*, 428 F.2d 319, 324 (5th Cir.), *cert. denied sub nom., Stewart, Trustee in Bankruptcy v. United States*, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970). (Footnotes omitted.)

The Third Circuit in *In re Michaud* dwelt particularly upon the "ordinary" meaning of the words "not reported":

> The critical factor is that in Section 17a(1)(c) Congress has excepted from the general rule of Section 17a(1) "taxes . . . which were *not reported* on a return made by the bankrupt." (Emphasis added.) As the Supreme Court has indicated many times, "normally 'statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them.'" *Colony, Inc. v. Comm'r*, 357 U.S. 28, 32, 78 S.Ct. 1033, 1036, 2 L.Ed.2d 1119 (1958). See also *Banks v. Chicago Grain Trimmers*, 390 U.S. 459, 465, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30 (1968) ("In the absence of persuasive reasons to the contrary, we attribute to the words of a statute their ordinary meaning."). The verb "report" is defined in Webster's New International Dictionary (3d ed. 1961) as follows: "to give a formal or official account or statement of: state formally." "Report," in other words, connotes the *formal* representation of a state of facts rather than the informal presentation which would be connoted by the terms "indicate," "include," etc. The fact that Congress employed the term "reported" in Section 17a(1)(c) demonstrates, therefore, that Congress intended to make the critical factor whether the taxes at issue were formally stated in the return.

*In re Michaud*, 458 F.2d 953, 957 (3d Cir.), *cert. denied sub nom., Michaud v. United States*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). (Footnote omitted.)

On this same point Collier says:

> First of all, the exception relates to taxes due more than three years before bankruptcy "which were not reported on a return." This language should mean where the tax liability was not reported as distinguished from the information giving rise to the liability.

1A Collier, Bankruptcy (14th ed., 1976), Sec. 17.14[4] at 1620.

While we recognize that the Haleys had not misstated gross income or the nature of their deduction claims, they did not list as taxes due the amount which now furnishes the basis for the government's $43,806.06 claim. It appears plain to us that the "taxes" here in dispute were never "reported" by the former Mrs. Haley "on a return made by [this] bankrupt" within the ordinary meaning of § ·17(a)(1)(c).

## LEGISLATIVE HISTORY

■ The District Judge (as well as the Bankruptcy Judge and appellee) place primary reliance upon the purpose of the 1966 Act which, as noted above, was designed to ameliorate in favor of taxpayers the preceding flat prohibition against bankruptcy discharge of any tax debts. There is no doubt Congress in adopting § 17(a) was seeking, at least in part, to serve the fundamental purposes of the Bankruptcy Act which were described as: "(1) the effective rehabilitation of the bankrupt and (2) the equitable distribution of his assets among his creditors." H.R.Rep. No. 687, 89th Cong., 1st Sess. (1965); 1966–2 Cum.Bull. 770, 771; S.Rep. No. 1158, 89th Cong., 2d Sess. (1966); U.S.Code Cong. & Admin.News, pp. 2468, 2469. We recognize that in § 17(a) Congress sought to serve the rehabilitative purposes of the Bankruptcy Act somewhat better and at the same time to improve the position of the general creditors, *vis-a-vis* the tax collectors, and to equalize, at least to some degree, the position of the bankrupt individual and a bankrupt company.

Yet we find nothing in the legislative history which tends to support appellee's position in this case that proviso (1)(c) does not mean just what it says.

Senator Ervin did indicate that among the purposes of § 17(a) were rehabilitation of the debtor and the motivation of the IRS to record its liens promptly so as to give notice to both the taxpayer and his creditors:

What this bill seeks is to strike a balance between the demands for rehabilitation of the bankrupt and the just claims of the Federal Government. It would provide that tax claims originating within 3 years prior to the bankruptcy remain just as valid as they are under existing law. It provides where the Internal Revenue Service has filed a lien, and thus given the general public which deals with the prospective bankrupt knowledge of the Federal Government's claim, that those taxes—regardless of how long they antedated the bankruptcy—are still valid. Other tax claims which originated prior to 3 years before bankruptcy and which have not been reduced to a lien, are discharged in bankruptcy as are all other claims if there are not sufficient assets to pay the claims in a bankrupt's estate.

The bill safeguards the government against a dishonest bankrupt because it provides that there will be no discharge of the tax claim in bankruptcy under any circumstances if the bankrupt has failed to file a Federal income tax return, or if the bankrupt has filed a fraudulent income tax return.

I submit that the bill strikes a fair balance by permitting the bankrupt to rehabilitate himself and by affording some measure of protection to people who deal with a creditor on the face of the public records available to them rather than to the Government alone.

It seems to me that the 3-year period which IRS is given to file a lien is reasonable, for it is identical with the period within which the Federal Government has the right to assess taxes.

Senator Ervin continued by quoting a House Committee report:

The Committee on the Judiciary believes that H.R. 3438 presents a most desirable and necessary resolution of the conflict between the demands of the public revenue on the one hand and the underlying purposes of the Bankruptcy Act on the other. The committee, therefore, recommends that this bill be given favorable consideration by the House.
112 Cong.Rec. 13810–11 (1966).

This language makes no reference to § 17(a)(1)(c). But 17(a), including (1)(c), was transmitted to the Senate immediately thereafter.

We believe that the interpretation of 17(a)(1)(c) which we have set forth above is consistent with such legislative history as is available.

The last proviso in § 17(a) states simply that "a discharge in bankruptcy shall not release or affect any tax lien." This policy is entirely consistent with the proviso in (1)(c) applicable to this case to exempt from discharge taxes "which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies."

With all respect to the District and Bankruptcy Judges' views, we hold that § 17(a) went just so far and no farther in discharge of a bankrupt's tax liabilities—and that the provisos, including (1)(c), spell out the "no farther" area.

## THE IN PARI MATERIA ARGUMENT

Likewise, we have read (without being able to agree) appellee's argument that 26 U.S.C. § 6501(e) (1970), should be read *in pari materia* with § 17(a)(1)(c). Section 6501 deals with omission of income and states:

*(e) Substantial omission of items.*—Except as otherwise provided in subsection (c)—

*(1) Income taxes.*—In the case of any tax imposed by subtitle A—

*(A) General rule.*—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may

be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph— .

(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

26 U.S.C. § 6501(e)(1)(A) (1970).

This section is not relied upon directly in this case because the government does not claim that there were any omissions from gross income.

What the language of § 6501 means to us is that Congress, when it desired to make the taxpayers' furnishing of information a critical factor, knew perfectly well how to do it. Clearly, in § 17(a)(1)(c) it did not choose to make the correct identification of improperly taken deductions a basis for discharge in bankruptcy. *In re Michaud*, 458 F.2d 953, 957–58 (3d Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972).

## THE DISCHARGE OF TAX LIENS ON PROPERTY ACQUIRED AFTER BANKRUPTCY

The Bankruptcy Judge and the District Judge held that "no liens on 1968 tax liability shall attach to property acquired by Mrs. Wukelic after the date of her bankruptcy," since both judges had also held that the government's claim of $43,806.06 was discharged. They relied upon *United States v. Sanabria*, 424 F.2d 1121 (7th Cir. 1970); *In re Braund*, 423 F.2d 718 (9th Cir.), *aff'g per curiam*, 289 F.Supp. 604 (C.D.Cal.1968), *cert. denied sub nom., United States v. McGugin*,

400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *In re Carlson*, 423 F.2d 714 (9th Cir.), *aff'g per curiam*, 292 F.Supp. 778 (C.D.Cal.1968), *cert. denied sub nom., California State Board of Equalization v. Carlson*, 400 U.S. 819, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970). All three of these cases dealt with liens where the underlying debt had been discharged.

 We now have held that this debt is not discharged. We know of no reason why the undischarged tax debt here involved may not be the basis for a government lien upon property acquired by the bankrupt after bankruptcy. Hence, we vacate this portion of the District Court ruling likewise. *See Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

The judgment of the District Court is reversed and the case is remanded for further proceedings.