MURNAGHAN, Circuit Judge:
Appellee filed a voluntary petition in bankruptcy on November 10, 1975. On March 15, 1976 he was granted a discharge, and on August 17, 1976 the bankruptcy proceeding was closed as a “no assets” case.
The IRS had been attempting since 1973 to collect[1] from appellee[2] taxes which it claimed appellee owed for the years 1969, 1970 and 1971. It is not seriously contended that the taxes claimed were not in fact due. The negotiations rather centered on the taxpayer’s attempt to get the IRS to accept a reduced figure to compromise a claim of doubtful collectibility, due to taxpayer’s precarious financial position.
On March 17,1976 the IRS sent appellee’s attorney a notice that the taxes were being assessed and on March 23, 1976 the IRS issued a notice of deficiency (the ninety-day letter), 26 U.S.C. §§ 6212, 6213. Appel-lee’s attorney responded on March 26, 1976, informing the IRS of the bankruptcy proceedings, and on April 13, 1976 the IRS filed its proof of claim in the Bankruptcy Court.
Appellee then on December 13,1976, petitioned the Bankruptcy Court to reopen the bankruptcy proceedings for a determination that the tax liabilities had been discharged. The Bankruptcy Court granted the petition to reopen. The parties filed a stipulation of facts. Appellee moved for summary judgment and the IRS moved for partial summary judgment.
The IRS claimed there was no discharge by reason of the bankruptcy because of 11 U.S.C. § 35(a)(1)(c) and (d) (§ 17(a)(1)(c) and (d) of the Bankruptcy Act).[3] The language of moment reads:
*317 A discharge in bankruptcy shall release a bankrupt from all of his provable debts ...
Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes ...
(c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt,
(d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat.
The Bankruptcy Court decided that the taxes were not rendered non-dischargeable by section (c), holding that the government’s failure to assess the taxes prior to bankruptcy was not due to a “prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt.” It therefore denied the government’s motion for partial summary judgment. The Bankruptcy Court also denied appellee’s motion for summary judgment because a factfinding hearing would be necessary to determine whether, under subsection (d), appellee had filed fraudulent returns or had willfully attempted to evade or defeat the taxes.
The district court adopted the recommendation of the magistrate to whom it had referred the case and affirmed the decision of the Bankruptcy Court. The government has appealed.
I.
At first blush it appears premature for the case to have reached us. No decision in favor of either party has been reached. All that has happened is that opposing motions for summary judgment have each been denied and the respective claims remain for plenary disposition. However, in a bánkruptcy matter, 11 U.S.C. § 47(a) provides in pertinent part:
The United States courts of appeals, in vacation, in chambers, and during their respective terms, as now or as they may be hereafter held, are invested with appellate jurisdiction from the ^several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact..... (Emphasis supplied.)
Hence, appealability exists even though the orders were interlocutory, provided that they occurred in proceedings in bankruptcy. Columbia Foundry Co. v. Lochner, 179 F.2d 630, 635 (4th Cir. 1950); In re Durensky, 519 F.2d 1024, 1028 (5th Cir. 1975). See In re Abingdon Realty Corp., 634 F.2d 133, at 135 (4th Cir. 1980).[4]
*318 II.
Turning to the merits, we first consider the effect of 11 U.S.C. § 35(a)(1)(c) which renders non-dischargeable in bankruptcy taxes “not reported on a return ... and ... not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt.”
There is no dispute that the taxes were not reported on a return made by the bankrupt. The taxpayer concedes that such was the case. It is equally clear that the bankruptcy, for these purposes, took place on the filing of the petition on November 10,1975, not at the later time of the discharge of the bankrupt on March 15,1976.[5] Hence a lifting, after November 10, 1975, of the prohibition on assessment pending the exhaustion of administrative or judicial remedies, if such a prohibition was in existence up to that date, would not achieve discharge of the tax liabilities. Only a termination of the prohibition on assessment “prior to bankruptcy” would accomplish that result.
The issue of whether there was a prohibition on assessment pending the exhaustion of administrative or judicial remedies illustrates how difficult to understand language may become for a casual reader when extremely technical areas such as taxation or bankruptcy are concerned and especially when the two are combined. There is no ambiguity over the phrase “administrative or judicial remedies.” The conducting of negotiations, up until they were broken off on September 16,1975, constituted administrative remedies. In re Indian Lake Estates, Inc., 428 F.2d 319, 324 (5th Cir. 1970), cert. denied sub nom. Stewart v. United States, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970); In re Greve, 39 A.F.T.R.2d 77-525, 76-2 U.S.T.C. ¶ 9805, 85,631 (W.D.Okla., November 15, 1976); In re Ferwerda, 36 A.F.T.R.2d 75-5413, 75-2 U.S. T.C. ¶ 9568, 87,681 (E.D.Wisc., June 23, 1975); In re Laytan Jewelers, Inc., 332 F.Supp. 1153, 1166 (S.D.N.Y.1971) (“The pendency of all the steps before assessment can lawfully be made must be held to be the pendency of administrative remedies available to the bankrupt....”)
The same clarity does not, however, exist for the term “prohibition.” It is undoubtedly true that, through its power to make jeopardy assessments under 26 U.S.C. §§ 6851, 6861, the IRS was able to make an assessment at any time. So, in the customary sense of the language, there was no prohibition. “Prohibition,” for the purposes of the statute with which we are concerned, however, has a very specialized and limited, or partial, meaning, referring to the requirement that, in the case of ordinary assessments,[6] they must be preceded by a 90-day letter, with the assessment to be made only upon expiration of the ninety days.[7] Prior to compliance with the 90-day letter requirement, assessment, in a non-jeopardy assessment sense, is prohibited.
The cases, while few in number, uniformly support the IRS position that it was, throughout the proceedings, until after *319 bankruptcy, under a prohibition. In re Indian Lake Estates, Inc., 428 F.2d 319, 323-24 (5th Cir. 1970), cert. denied sub nom. Stewart v. United States, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 383 (1970); In re Greve, 39 A.F.T.R.2d 77-525, 76-2 U.S.T.C. ¶ 9805, at p. 85,631 (W.D.Okla., November 15, 1976); In re Laytan Jewelers, Inc., 332 F.Supp. 1153, 1165-66 (S.D.N.Y.1971); see also In re Ferwerda, 36 A.F.T.R.2d 75-5413, 75-2 U.S.T.C. ¶ 9568 (E.D.Wisc., June 23, 1975).
The taxpayer cites 1A Collier on Bankruptcy, ¶ 17.14(4) (14th ed. 1978)[8] in support of the proposition that the taxes were discharged. Even if the citation from Collier were deemed to support the taxpayer, we do not believe it can prevail in the face of cases uniformly decided in a contrary fashion.
Properly read, the Collier statement addresses a situation in which, prior to bankruptcy, there is a cessation of all administrative or judicial remedies, and thereafter, still before bankruptcy, 90 days or more also elapse, so that an ordinary assessment could have been made. The Collier language is “if an assessment could have been made before bankruptcy (whether it was or not).”[9] In the instant case, bankruptcy came less than 90 days (55 days to be exact) after the termination of pursuit of administrative or judicial remedies. So no ordinary assessment before bankruptcy could have been made and Collier does not support the position of the taxpayer.
The taxpayer also seeks to capitalize on the lackadaisical approach by the government to its business of fostering prompt collection of taxes. The IRS responds with criticisms of the taxpayer and an attempt to shift the blame for the delay. It alludes to a supposed congressional purpose not to multiply bankruptcies brought on by too immediate action by the IRS when its proceeding more deliberately might facilitate avoidance of bankruptcy altogether. In re Michaud, 458 F.2d 953, 958-59 fn. 17 (3d Cir. 1972), cert. denied, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). In all events, it is not necessary for us to point the finger.[10] In Indian Lake, supra, 428 F.2d at 324, it was unambiguously stated:
[A]n unassessed federal tax liability is prohibited and therefore not discharged if the “90-day letter” has not been sent out, regardless of how old the subject tax liability may be.
Accord, In re Greve, 39 A.F.T.R.2d 77-525, 76-2 U.S.T.C. ¶ 9805 (W.D.Okla., November 15, 1976); In re Ferwerda, 36 A.F.T.R.2d 75-5413, 75-2 U.S.T.C. ¶ 9568 (E.D.Wisc., June 23, 1975); In re Laytan Jewelers, Inc., 332 F.Supp. 1153, 1166 (S.D.N.Y.1971).
Although desultory, the negotiations were continuing up until September 16, 1975, when they were broken off by the IRS rejection of the taxpayer’s offer in compromise. There is a question whether, upon the breaking off of negotiations, since thereafter there no longer were pending *320 administrative or judicial remedies available to the bankrupt awaiting exhaustion, the proviso of 11 U.S.C. § 35(a)(1)(c) precluding discharge was met. The statutory protection of the government against discharge concerns taxes not assessed. because of a prohibition on assessment “pending the exhaustion of administrative or judicial remedies available to the bankrupt.”
The argument would run that, prior to bankruptcy, after September 16, 1975, while a prohibition on assessment had not yet ceased, nevertheless the prohibition was no longer “pending exhaustion of administrative or judicial remedies.” However, the argument will not withstand scrutiny. While no administrative or judicial remedies were pending from and after September 16,1975, they had not yet been exhausted because the taxpayer, once the 90-day letter was sent, still had 90 days to file a petition in the Tax Court for a redetermination of the deficiency. 26 U.S.C. § 6213(a). Thus, the prohibition on assessment which had, prior to September 16, 1975, come into existence and thereafter continued to exist, pending the exhaustion of administrative or judicial remedies, remained outstanding, even after September 16, 1975, until the 90 day letter could be sent, and the ninety-day period could expire or the Tax Court could make its determination. Even the immediate transmission of the 90-day letter on September 16, 1975, could not have taken the present case out of the statutory language of subsection (c) setting out a ground for non-dischargeability, because the prohibition on assessment necessarily remained extant at least until December 15, 1975 (90 days), /. e. beyond November 10, 1975, the date of bankruptcy.
The argument would, of course, have pertinence had the ninety-day letter in fact been filed and the ninety days run prior to bankruptcy. In re Greenan, 40 A.F.T.R.2d 5390, 77-2 U.S.T.C. ¶ 9591 (W.D.N.Y. July 8, 1977). Arguably, it might even prevail if there had been time between the break-off of negotiations and bankruptcy for a ninety-day letter to have been sent, and the ninety-day period to have expired, even if the letter, in fact, had not been sent.[11] However, with the break-off of negotiations occurring on September 16,1975, even had the ninety-day letter been sent immediately on September 16, 1975, the government would have continued to have been prohibited from assessment of the taxes until a date subsequent to filing of the petition for bankruptcy. In effect the prohibition on assessment for at least a period of ninety days from the time administrative or judicial remedies are no longer pending falls within the terminology “prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt.”
Accordingly, the decision denying partial summary judgment to the IRS is reversed. The case is remanded to permit appropriate further proceedings following the entry of the requested partial summary judgment.

REVERSED AND REMANDED.

.The attempts were somewhat lethargic. Exchanges of correspondence between IRS and counsel for the taxpayer occurred between August 17, 1973 and October 29, 1973. The record reflects no activity at all between October 29, 1973 and May 21, 1975. However, on May 21, 1975, the taxpayer offered an aggregate of $15,000 in settlement of the tax claims payable in installments. The offer was rejected by the IRS on September 16, 1975. The deficiencies for the three years as determined by the Commissioner totalled $49,257.74.

. • For one of the three years involved, appellee and his wife filed a joint return. Due to the conclusion we have reached, her involvement is of no special significance. For convenience we shall refer simply to appellee as the taxpayer.

. The code reference is to the Bankruptcy Act of July 1, 1898, as amended, repealed on November 6, 1978, effective October 1, 1979. The repealed section here controls, because of the provision in the Bankruptcy Reform Act of 1978 that a matter or proceeding initiated un *317 der the Bankruptcy Act should be conducted and determined as if the new law had not been enacted. Pub.L. 95-598, Title IV, § 403(a), November 6, 1978.

. There is an esoteric distinction between “proceedings in bankruptcy” and “controversies arising in proceedings in bankruptcy.” As to “proceedings in bankruptcy,” whether interlocutory or final, the statute confers appellate jurisdiction. No such right of appeal for interlocutory matters exists, however, for “controversies arising in proceedings in bankruptcy.” Such controversies “present distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt’s estate.” In re Durensky, supra, 519 F.2d 1024, at 1027; United Kingdom Mutual Steamship Assurance Ass'n v. Liman, 418 F.2d 9, 10 (2d Cir. 1969). Compare Columbia Foundry Co. v. Lochner, supra, 179 F.2d 630, at 635. There is also a judicially created exception to the immediate appealability under 11 U.S.C. § 47(a) for orders which involve “preliminary or procedural matters” or which lack “definitive operative finality.” In re Abingdon Realty Corp., supra, at 317; Carolina Mills, Inc. v. Corry, 206 F.2d 76, 77 (4th Cir. 1953); In re Durensky, supra, 519 F.2d 1024 at 1029.
Since, however, the order here disposes of a right or duty asserted by one of the parties, independent of any issue affecting or involving the right or title to the bankrupt’s estate, as between the trustee and an adverse claimant, and since the order here has definitive operative finality as to the issue decided, it is appropriate for us to hear and dispose of the appeal.
The arcane distinction between “proceedings” and “controversies arising in proceed *318 ings” is eliminated by the Bankruptcy Reform Act of 1978. Under it, “only final orders of the trial court in bankruptcy matters are appeala-ble to the courts of appeals.” In re Licek Potato Chip Co., 599 F.2d 181, 183, fn. 2 (7th Cir. 1979).

. See 11 U.S.C. § 1(13): “ ‘Date of bankruptcy’, 'time of bankruptcy’, ‘commencement of proceedings’, or ‘bankruptcy’, with reference to time, shall mean the date when the petition was filed.”

. As distinguished from jeopardy assessments.

. See 26 U.S.C. § 6213(a):
(a) ... Within 90 days .. . after the notice of deficiency authorized in section 6212 is mailed ... the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44 or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day .. . period, . .. nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.
(Emphasis added.) Taxpayer filed no petition with the Tax Court and could not have done so until a 90-day letter had been sent.

.The exception in (c) is not as clear as possible. A conceivable construction of it could be that if the Government made a pre-bankruptcy assessment (once the prohibition was lifted), the tax is dischargeable. But if no assessment was made, even if it could have been, the tax is not dischargeable. This construction is illogical; the distinction serves no apparent purpose. The meaning that should be attributed to the language is that the tax may be dischargeable if an assessment could have been made before bankruptcy (whether it was or not), and the tax debt is more than three years old. If actual assessment at any time before bankruptcy was a key factor to effectuate non-discharge-ability, there would be no need for the second proviso in § 17a(l) removing tax liens from dischargeable tax debts.

. We have no occasion to consider whether discharge in Collier’s view, would have occurred, once 90 days had run following the termination of negotiations, whether a notice of deficiency had been sent or not. The author may have referred only to the situation where a notice of deficiency (the 90-day letter) had been sent, and the 90 days had run.

. The parties agree that a six-year limitations period applied. Taxpayer had understated his gross income by more than 25 percent. 26 U.S.C. § 6501(e). The limitations as to the earliest of the three years, consequently, would not have expired until April 15, 1976. The notice of deficiency was transmitted on March 23, 1976.

. See footnotes 8 and 9, supra.