**In the Matter of Hugh Edward ALLEN, Bankrupt.**

**Hugh Edward ALLEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. B76–3517A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

March 5, 1982.

Willard & Rushing, Atlanta, Ga., for plaintiff.

James E. Baker, U. S. Atty., Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION

A. D. KAHN, Bankruptcy Judge.

A trial was held on July 9, 1981. After considering the evidence presented and the briefs of counsel, the court makes the following findings of fact and conclusions of law.

The question presented is whether the proposed tax deficiency assessments for the taxable years 1971 and 1972 were discharged in the Plaintiff's bankruptcy proceeding, which was commenced on November 26, 1976. The court has previously ruled that the proposed deficiencies in income taxes for the years 1973, 1974 and 1975 were precluded from discharge, since those proposed deficiencies became "legally due and owing" within three years of the date Plaintiff filed his original bankruptcy petition. Bankruptcy Act, § 17a(1). *Allen v. United States*, B76–3517A (N.D.Ga. Oct. 7, 1981). At issue in this proceeding in § 17a(1)(c) of the Bankruptcy Act, which states in part as follows:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . .: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes . . . which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, . . . .

It is not disputed that the taxes at issue here "were not reported on a return made

by the bankrupt," and consequently that the first element of the exception to discharge has been satisfied. *Ibid.* The issue in the case is whether the subject taxes "were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt . . . ." *Ibid.*

The "prohibition on assessment" as used in the Bankruptcy Act was considered by the Fifth Circuit in *United States v. Stewart (In re Indian Lake Estates, Inc.),* 428 F.2d 319 (5th Cir. 1970). It was there noted:

Int.Rev.Code of 1954, § 6213(a) [footnote omitted] very clearly imposes prohibitions on the assessment of taxes:

(1) unless and until a notice of deficiency (most frequently referred to as the 90-day letter) is sent to the taxpayer,

(2) until the expiration of the waiting period required if no petition be filed in the Tax Court after such notice of deficiency has been served, and

(3) if a petition be filed in the Tax Court, until the decision of the Tax Court becomes final.

428 F.2d at 323.

Further discussing the interface of tax and bankruptcy law, the court stated:

Thus if it is assumed that the draftsmen of the 1966 amendments understood tax law and are deemed to have meant what they plainly said, an unassessed federal tax liability is prohibited and therefore not discharged if the "90-day letter" has not been sent out, regardless of how old the subject tax liability may be. Certainly this is true in cases such as the one at bar where, due to the complicated nature of the taxpayer's legal affairs, lengthy administrative negotiations with numerous extensions of the statute of limitations are still pending and executory.

428 F.2d 324.

The foregoing principle was also recognized in *Dail v. United States (In re Dail)* 635 F.2d 315 (4th Cir. 1980).

Applying the law to the facts of this case, it is clear that the subject taxes are nondischargeable. As it will be seen, the 90-day letter was not sent out prior to the commencement of the debtor's bankruptcy.

The taxpayer's involvement with the audit of the 1972 tax return began in September, 1974. The taxpayer engaged Mr. Willard as counsel at approximately that time. A closing conference was held in January, 1975. Also, in January, 1975, the taxpayer and his wife signed certain waivers, which will be discussed further in this opinion. Communications between the revenue agent and the taxpayer or his representative continued. Meanwhile, the taxpayer began having financial difficulties and filed bankruptcy in November, 1976.

On December 8, 1976, an examination report for the years 1971 through 1974 was sent to the taxpayer by the government. This report notified the bankrupt of deficiencies, and informed the taxpayer that if the findings were not accepted, the taxpayer had 30 days to file a written protest and arrange a conference. On January 20, 1977, the taxpayer's representative, Mr. Willard, requested an additional 60 days for filing a protest. That protest was filed on March 23, 1977 and requested that the case be assigned for a conference at the Appellate level. No conference was held on this examination. On December 8, 1977, an examination report for the year 1975 was sent to the taxpayer. Mr. Willard filed a protest to the 1975 examination report, and requested that the case be assigned for an Appellate level conference. On August 23, 1978, Mr. Willard, as attorney for the taxpayer, executed Form 872 for the years 1971 through 1974, extending the statute of limitations until October 15, 1979. The Appeals Division heard and considered the matters in 1979. On May 8, 1979, Mr. Willard requested a second appellate conference. Finally, on August 23, 1979, a Statutory Notice of Deficiency, the 90-day letter, for the years 1971 through 1975 was issued, almost 3 years after the bankruptcy. The *Indian*

*Lake* rule requires the conclusion that the deficiencies are nondischargeable.

The taxpayer concedes in his brief that there was clearly a prohibition on the assessment of taxes on November 29, 1976, the date of the filing of the bankruptcy petition, since the 90-day letter had not been issued. The taxpayer also concedes that he pursued available administrative and judicial remedies after the bankruptcy petition was filed, noting that § 17a(1)(c) is not concerned with events *after* the filing of the petition. This interpretation is borne out by the very words of the statute, "a discharge ... shall not release a bankrupt from any taxes ... which were *not assessed prior to bankruptcy* ...." Bankruptcy Act, § 17a(1)(c). The taxpayer's argument is that he did not engage in delay producing negotiations *prior* to bankruptcy and that he could not pursue administrative remedies, particularly conferences with the Appeals Division, until *after* he had filed the bankruptcy petition. Presumably, the taxpayer attempts to blame the revenue agent involved in the audit for the delayed transmission of the 30-day letter, which triggers more formal review procedures and precedes the 90-day letter. In short, the taxpayer argues that the taxes are nondischargeable only because the agent raised "new years and new issues" after the "closing conference."

This argument ignores the complete picture, however. The audit of the taxpayer's 1972 federal income tax return began sometime around September, 1974. On January 30, 1975, the taxpayer and his wife executed Form 5214, "Consent Extending Period of Limitations For Assessment of Income Tax," which extended the statute of limitations for the assessment of the taxpayer's income taxes for the years 1971 through 1976 until October 15, 1978. (The statute of limitations was again extended through October 15, 1979, by Mr. Willard in August, 1978.) In addition, on January 30, 1975, the taxpayer and his wife executed Form 5213, "Election to Postpone Determination." This election had the effect of deferring the determination of whether the taxpayer's horse training operation was engaged in profit, an issue crucial to the allowability of deductions relating to the horse farm. Such election postponed the profitability determination for some six years, which, as Mr. Willard testified at trial, *benefitted* taxpayers in two respects: first, it afforded the taxpayer the opportunity to show a profit in two out of seven years of operation, thus supporting the allowability of the deductions; and second, the election amounted to "causing the Service to sit back and not do anything for a period of time with respect to that issue ...." Transcript, p. 31.

The record shows that the options exercised by the taxpayer prior to the bankruptcy, rather than the actions or the alleged inactions of the government, effectively resulted in the lengthy, drawn-out procedures that culminated in the issuance of the 90-day letter on August 23, 1979.

The taxpayer argued that his election to postpone the determination of the profitability of the horse farm was invalid because it was not timely filed. It was also asserted that the taxpayer made the election against the advice of counsel. In the alternative, the taxpayer argued that the election was inaction per se on the part of the Internal Revenue Service. Such conclusions are not supported by the law or by the record, particularly in view of the taxpayer's execution of the waiver of the statute of limitations.

Finally, the taxpayer argued that the proposed deficiencies for taxable years 1971 and 1972 relating to issues other than the horse farm are dischargeable despite the horse farm election, and that "it is possible to discharge the portion of unpaid taxes which were reported on a return and remain unpaid, and not discharge the portion of taxes which were not reported on a return." Brief for Plaintiff, p. 10. These conclusions are without support in the law.

The court concludes that subject tax deficiencies for the tax years 1971 and 1972 are nondischargeable.

An appropriate order is entered contemporaneously herewith.